PAUL KELLY, JR., Circuit Judge.
Plaintiff-Appellant David Earl Shero appeals from the district court’s grant of qualified immunity to Defendants-Appel-lees Dorothy Parker (city attorney), William Galletly (city manager), and Ivonne Buzzard (city clerk) (collectively “City employees”). He also appeals from the grant of summary judgment in favor of Defendant-Appellee City of Grove, Oklahoma (“the City”). The district court granted qualified immunity to the above City employees on a motion to dismiss, essentially finding the absence of a constitutional violation. In a later opinion, the district court granted summary judgment for the City, finding that it had not violated any constitutional right, notwithstanding Mr. Shero’s claims that the City denied him certain records, limited his speaking time at a city council meeting, and filed a state declaratory judgment suit against him allegedly in retaliation for requesting records. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

In early 2003, Mr. Shero attended a Grove city council meeting and spoke in defense of a fired city employee. Ill Aplt. App. tab 16C at 34-35. He returned in the fall of 2003 to refute that the local airport board and a local contractor were engaging in criminal activity by removing dirt from airport property. Id. tab 16E at 84. He requested a copy of Ms. Parker’s resume that same fall and Ms. Buzzard, the city clerk, denied his request after *1199 being instructed to do so by Mr. Galletly. Aplt. Br. at 4.
On January 2 and January 30, 2004, Mr. Shero requested a “council packet,” a packet of information individually prepared for council members before each meeting containing agenda items and other information, from Ms. Buzzard. See III Aplt.App. tab 16 at 3; tab E at 66-68. He was denied each time, although previously he had been given copies. Ill ApltApp. tab 16 at 3; IV ApltApp. tab F at 19-20; Aplee. Br. at 4. Ms. Buzzard was following the advice of Ms. Parker who determined that the packets were not public after learning that Mr. Shero was receiving copies of council packets intended for a specific individual. Ill ApltApp. tab 16 at 4-5; IV ApltApp. tab F at 19-20; VI ApltApp. tab 22 at 2. In between these denials, on January 6, 2004, Mr. Shero again spoke at a city council meeting, this time to voice his objections to being denied council packets and to allege that the council violated the Oklahoma Open Meetings Act (“OOMA”), Okla. Stat. tit. 25, § 301. II ApltApp. part 2, tab 14K at 1; Aplt. Br. at 9. Immediately after the January 30 denial, Mr. Shero’s attorney informed Ms. Buzzard that Mr. Shero would pursue legal action to get the packets. Ill Aplt. App. tab 16 at 12.
On February 2, 2004, Ms. Parker (on behalf of the City) filed a state declaratory judgment action naming Mr. Shero as the defendant pursuant to the Oklahoma Declaratory Judgment Act, Okla. Stat. tit. 12, § 1651. I ApltApp. tab 2, part 2 at 1-3. Ms. Parker titled the pleading a “Motion for Protective Order and Order Determining Certain Materials Exempt from Public Disclosure” and asked for declaratory relief and a protective order pursuant to the Oklahoma Open Records Act (“OORA”), Okla. Stat. tit. 51, § 24A.1. Id. The state court ordered a hearing on the request for a protective order that same day. Id. part 2 at 4. Mr. Shero filed an answer and counterclaim on February 9, 2004, seeking a ruling that the council packets and Ms. Parker’s resume are open records not subject to any exception under OORA. Id. part 2 at 5-10. On March 23, 2004, the state court denied the City’s request for a protective order, held that it lacked subject matter jurisdiction over the declaratory action, and concluded that Mr. Shero’s counterclaim could proceed to trial. I ApltApp. tab 2, part 4 at 33-34.
Mr. Shero attended another city council meeting on February 17, 2004. V Aplt. App. tab 17 at 11. During the portion of the meeting devoted to public comments, the mayor informed Mr. Shero that he would be limited to three minutes. Id. There were no other speakers present. Aplt. Reply Br. at 16. Mr. Shero used his time to speak in opposition to the lawsuit against him and to speak about a district attorney opinion letter identifying the City as violating the OORA and the OOMA. II ApltApp. tab 15E at 3. The parties dispute whether the City had a preexisting practice of limiting speakers during the public comments portion of city council meetings on February 17, 2004. See Aplt. Br. at 6; Aplt. Reply Br. at 17-18; Aplee. Br. at 15.
On April 26, 2004, the state court ruled that the council packets and Ms. Parker’s resume are open records under state law and permanently enjoined the City from denying requests for these items. I Aplt. App. tab 2, part 6 at 3-5. Mr. Shero sought attorney’s fees and on May 25, 2004, the parties entered into a settlement agreement wherein the City agreed to pay Mr. Shero approximately $28,000 in settlement of his claim for attorney’s fees incurred in the state action. I ApltApp. tab 2, part 6 at 37-38.
In March 2005, Mr. Shero brought this federal action against the City and some of *1200 its employees urging various claims pursuant to 42 U.S.C. § 1983 and the Oklahoma Governmental Tort Claims Act (“GTCA”), Okla. Stat. tit. 51, § 151. On September 20, 2006, the district court dismissed the City employees based upon qualified immunity and ruled that Mr. Shero’s claims are not barred by the doctrine of res judi-cata. VI Aplt.App. tab 21 at 15. In a subsequent ruling dated November 2, 2006, the district court granted summary judgment to the City on both sets of claims, including those pursuant to the GTCA. VI ApltApp. tab 22 at 18-19. The judgment concerning the GTCA claims is not on appeal.
Mr. Shero argues on appeal that the district court improperly granted summary judgment on his First Amendment claims that the City denied him certain records, limited his speaking time at a city council meeting, and filed a state declaratory judgment suit against him allegedly in retaliation for his expressive activities. He contends that even if these actions do not amount to First Amendment deprivations, a genuine issue of material fact exists as to whether these actions chilled his First Amendment 1‘ights. Finally, he argues that the City employees are not entitled to qualified immunity to the extent that we conclude that he has raised a viable constitutional claim.

Discussion

We review the district court’s grant of summary judgment for the City de novo, applying the same legal standard as the district court. Darr v. Town of Telluride, Colo., 495 F.3d 1243, 1250 (10th Cir.2007). Under Fed.R.Civ.P. 56(c), summary judgment is proper when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Judgment as a matter of law is appropriate when the nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). “Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.” Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation omitted). The question then is “whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). “[Ojn summary judgment, the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.” Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.
This court uses the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally. Moya v. Schollenbarger, 465 F.3d 444, 455 (10th Cir.2006). Our review is de novo. Fed.R.Civ.P. 12(b)(6); Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.2007). In reviewing a dismissal, a court must accept as true all well-pleaded facts, as distinguished from con-clusory allegations, and those facts must be viewed in the light most favorable to the non-moving party. Moya, 465 F.3d at 455. The complaint must plead sufficient facts, taken as true, to provide “plausible grounds” that discovery will reveal evidence to support the plaintiffs allegations. Bell Atlantic Corp. v. Twombly, — U.S. -, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).
*1201 We first review the district court’s grant of summary judgment for the City.[1] This review requires us to analyze whether Mr. Shero was deprived of any constitutional right when he was denied council packets by the City and when the mayor imposed a three-minute time limitation on his speech at the February 17, 2004 council meeting. We also analyze whether the City unconstitutionally retaliated against Mr. Shero’s speech at council meetings by denying him council packets, imposing the time limitation, and filing the declaratory judgment action in state court. We address each issue in turn.[2]
I. Denial of Council Packets
Mr. Shero urges the court to reverse the district court’s grant of summary judgment for the City because the City violated his First Amendment rights when it refused to provide him with council packets as required by state law. Aplt. Br. at 19. The City, Mr. Shero argues, interfered with his First Amendment right to gather news by means within the law. Id. At oral argument, Mr. Shero’s counsel stated that the two best cases in support of this theory are Houchins v. KQED, Inc., 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (plurality opinion) and Capital Cities Media, Inc. v. Chester, 797 F.2d 1164 (3d Cir.1986) (en banc). We do not think either establishes this point, nor does any other case that we can find. Both, in actuality, lead to the opposite conclusion.
The Supreme Court in Houchins recognized that “[tjhere is an undoubted right to gather news from ‘any source by means within the law.’ ” 438 U.S. at 11, 98 S.Ct. 2588 (quoting Branzburg v. Hayes, 408 U.S. 665, 682, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)). The Court tempered this language, however, by stating that this right “affords no basis for the claim that the First Amendment compels others — private persons or governments — to supply information.” [3] Id. In addition, we have previ-
*1202 ously acknowledged that “[a]ny reference in Supreme Court precedent to constitutional entitlement of the public to information held by the government ‘mean[s] no more than that the government cannot restrain communication of whatever information [is in fact acquired].’ ” Lanphere & Urbaniak v. Colorado, 21 F.3d 1508, 1512 (10th Cir.1994) (quoting Houchins, 438 U.S. at 10, 98 S.Ct. 2588) (alterations in original). Clearly, then, Mr. Shero has no First Amendment right to receive the council packets from the City, but rather only a state right under the OORA as the state court held. The City is not compelled by the First Amendment to provide information to Mr. Shero but must only provide the council packets to him under state law, and Mr. Shero has already received his remedy in state court.
Nothing the Third Circuit said in Chester changes the interpretation of Houch-ins. Although the Chester court noted that the First Amendment Free Speech Clause “bar[s] government interference with the flow of information and ideas to the public” and that “[t]here is an undoubted right to gather news from any source by means within the law,” it qualified this language by stating that “[i]t simply does not seem reasonable to suppose that the free speech clause would speak, as it does, solely to government interference if the drafters had thereby intended to create a right to know and a concomitant governmental duty to disclose.” 797 F.2d at 1167-68 (emphasis omitted) (internal quotations omitted). As Mr. Shero has shown no “interference” by the City other than its actual denial of his requests for the council packets — and there is no constitutional “duty to disclose” — he has no actionable claim under § 1983 on this basis.
II. Speech Limitation
Mr. Shero next argues that the three-minute time limitation on his speech imposed by the mayor during the public comments portion of the February 17, 2004 city council meeting constituted a pri- or restraint in violation of his First Amendment rights and that the district court erred when it ruled otherwise. Aplt. Br. at 43.
Under our precedent, it is not entirely clear whether a city council meeting should be treated as a “designated public forum” or a “limited public forum.” A “designated public forum” is created when the government “intentionally open[s] a nontraditional public forum for public discourse.” Ark. Educ. Television Comm’n v. Forbes, 523 U.S. 666, 677, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998) (internal quotation omitted). The government’s action in excluding a member of a class to which a designated forum is made generally available is subject to strict scrutiny. Id. A “limited public forum,” on the other hand, “arises where the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum.” Summum v. City of Ogden, 297 F.3d 995, 1002 n. 4 (10th Cir.2002) (internal quotation omitted). Any government restriction on speech in a limited public forum must only be reasonable in light of the purpose served by the forum and be viewpoint neutral. Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 829, 115 *1203 S.Ct. 2510, 132 L.Ed.2d 700 (1995). We need not decide whether a city council meeting is a designated public forum or a limited public forum, however, as the time limitation on Mr. Shero’s speech satisfies the more stringent strict scrutiny standard.
In a designated public forum, “the government may only impose content-neutral time, place, and manner restrictions that: (a) serve a significant government interest; (b) are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication.” PeTA v. Rasmussen, 298 F.3d 1198, 1204 (10th Cir.2002) (citing Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)). The three-minute time limitation imposed on Mr. Shero’s speech was a restriction appropriately designed to promote orderly and efficient meetings. See Rowe v. City of Cocoa, Fla., 358 F.3d 800, 803 (11th Cir.2004); Wright v. Anthony, 733 F.2d 575, 577 (8th Cir.1984); V Aplt.App. tab A at 1. In addition, Mr. Shero had ample alternative channels of communication available to him and utilized them by, among other things, appearing in a local newspaper and circulating flyers. V Aplt. App. tab 17E at 1-2; tab I at 1; Aplee Br. at 9.
III. Retaliation
Mr. Shero next challenges the district court’s determination that he did not experience any unconstitutional retaliation by the City for exercising his First Amendment rights. Aplt. Br. at 46. Mr. Shero alleges that the City retaliated against and attempted to chill his speech about government corruption at city council meetings by rejecting his requests for council packets, placing a time limit on his speech at the February 17, 2004 city council meeting, and fifing a declaratory judgment suit against him. Id. at 19-20. The district court analyzed whether the City retaliated against Mr. Shero for requesting council packets and not whether it retaliated against him for his speech about city corruption. Even expanding our analysis to recognize, however, that the City’s acts could have been in response to Mr. Shero’s constitutionally protected speech at the city council meetings, we conclude that Mr. Shero has not demonstrated unconstitutional retaliation. The district court’s decision was essentially correct on this issue.
In Worrell v. Henry, we considered the elements necessary for a retaliation claim where the governmental defendant is not the plaintiffs employer nor a party to a contract with the plaintiff. See 219 F.3d 1197, 1212 (10th Cir.2000). Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant’s actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant’s adverse action was substantially motivated as a response to the plaintiffs exercise of constitutionally protected conduct. Id. (quotations omitted). “[W]hen the plaintiff alleges that the defendant’s action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective ... a trivial or de minimis injury will not support a retaliatory prosecution claim.” Eaton v. Meneley, 379 F.3d 949, 954-55 (10th Cir.2004) (internal quotation omitted).
Although Mr. Shero was engaged in constitutionally protected activity when he alleged government corruption during the public comments portion of the city council meetings, see Nat’l Ass’n for the Advancement of Colored People v. Claiborne Hard *1204 ware Co., 458 U.S. 886, 913, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), the City’s actions would not, as a matter of law, chill a person of ordinary firmness from continuing to speak out. See Worrell, 219 F.3d at 1212. Indeed, the City’s denial of his requests for council packets and the mayor’s implementation of a time limitation on his speech are, at best, de minimis injuries. See Eaton, 379 F.3d at 954-55. Mr. Shero has not shown that his discourse with the council was inhibited in any way by the denials of the council packets or the three-minute speech limitation. He remained “free to express [his] views publicly and to criticize” the city council, id. at 956 (internal quotation omitted), and, in fact, he did.
Furthermore, being properly named as a defendant in a declaratory judgment suit, however styled, would not chill a person of ordinary firmness from continuing to engage in constitutionally protected activity. See Worrell, 219 F.3d at 1212. “The nature and purpose of a declaratory judgment is to declare rights,” not to attack the opposing party. Degarza v. Okla. City Univ., 20 P.3d 152, 153 (Okla.Civ.App.2000). In particular, under Oklahoma’s Declaratory Judgment Act, Okla. Stat. tit. 12, § 1651, the state court was prohibited from awarding damages against Mr. Shero.
IV. Qualified Immunity
Finally, Mr. Shero urges us to reverse the district court’s grant of qualified immunity to Ms. Parker, Mr. Galletly, and Ms. Buzzard because they violated his constitutional rights. Aplt. Br. at 57. Our conclusions above require us to affirm the district court.
Under the doctrine of qualified immunity, “government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The privilege is an immunity from suit rather than a mere defense to liability. Serna v. Colo. Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir.2006). This court uses a step-by-step, three-part test in analyzing a qualified immunity defense: (1) whether the plaintiffs allegations, if true, establish a constitutional violation (if not, the claim is dismissed); (2) whether the law was clearly established at the time the alleged violations occurred; and (3) whether extraordinary circumstances — such as reliance on the advice of counsel or on a statute — so prevented the official from knowing that his or her actions were unconstitutional that he or she should not be imputed with knowledge of a clearly established right. Gomes v. Wood, 451 F.3d 1122, 1134 (10th Cir.2006).
We have held above that, as a matter of law, the City and its employees’ actions in rejecting Mr. Shero’s requests for council packets, limiting his speaking time at a city council meeting, and filing a declaratory judgment suit against him did not violate Mr. Shero’s First Amendment rights or constitute unconstitutional retaliation. As there was no constitutional violation, see id., the district court’s grant of qualified immunity to the City employees was appropriate.
AFFIRMED.

.The concurring and dissenting opinion suggests that Mr. Shero did not properly raise several of the claims we address. The City has not made such an argument. Part of the district court's rationale for granting summary judgment in favor of the City, urged by the City given its interpretation of the first amended complaint, II Aplt.App. tab 15 at 16-18, was that Mr. Shero had no First Amendment right to information. VI Aplt. App. tab 22 at 6. Plainly, this issue was developed before the district court, raised on appeal, and should be addressed by this court. With respect to the three-minute time limitation, it was plainly addressed by the district court in the context of forum analysis on summary judgment, VI Aplt.App. tab 22, 12-15, and we think it adequately, if not artfully, raised here. Aplt. Br. at 42; Aplt. Reply Br. at 15-19. The First Amendment retaliation claim based on the denial of information and the three-minute time limitation was not raised below; we exercise our discretion to reach it, however, because the facts are sufficiently developed and its lack of merit is obvious. See Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).

. The City, in addition to its other arguments, urges us to affirm the district court’s judgment with respect to any of Mr. Shero’s claims relating to the denial of council packets based upon the doctrine of res judicata. Aplee. Br. at 20-23; see Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1088 (10th Cir.2006) (noting “we have discretion to affirm on any ground adequately supported by the record, so long as the parties have had a fair opportunity to address that ground”) (internal quotations omitted). Any of Mr. Shero’s claims relating to the denial of council packets, it argues, are barred because the denials have already been litigated in state court. See Aplee. Br. at 23. The district court rejected the Defendants’ res judicata argument, but invited the Defendants to apply issue preclusion "to narrow the issues in this case to ones that have not been previously litigated.” At best, affirming the judgment on this basis would only resolve part of Mr. She-ro’s appeal, and because we wholly affirm the district court on First Amendment grounds, we need not accept this invitation.

. Although Houchins is a plurality opinion of a seven-member Court joined by three mem *1202 bers, Justice Stewart concurred in the judgment and wrote that "[t]he First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government” and he ”agree[d] substantially” with what the plurality opinion said on that topic. 438 U.S. at 16, 98 S.Ct. 2588 (Stewart, J., concurring in the judgment).